IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 14-35816 (joined with No. 14-35598)

JULIANNE PANAGACOS, et al.,

Plaintiff – Appellants,

v.

JOHN J. TOWERY, et al.,

Defendant – Appellees.

Appeal from the Judgment of the United Stated District Court
for the Western District of Washington (Tacoma)
W. D. Wash. No. 3:10-cv-05018-RBL
(Honorable Ronald B. Leighton)

BRIEF OF APELLEE CITY OF TACOMA, ET AL'S

JEAN P. HOMAN
WSBA #27084
TACOMA CITY ATTORNEY'S OFFICE
747 Market Street, Suite 1120
Tacoma, WA 98402
Telephone: (253) 591-5885
Facsimile: (253) 591-5755
E-mail: jhoman@cityoftacoma.org

Attorney for Defendants-Appellees

# TABLE OF CONTENTS

I.  Jurisdictional Statement..........................................................................1

    A.  District Court's Jurisdiction .....................................................1

    B.  Court of Appeal's Jurisdiction .................................................1

    C.  Timely Notice of Appeal...........................................................1

II.  Issues for Review ..........................................................................1

    1.  Whether the grant of summary judgment on Berryhill, Dunn, and Crespo's First Amendment claims against Mark Feddersen and Gary Smith should be affirmed where plaintiffs failed to adduce evidence that the defendants acted with the requisite intent and where there is no evidence that defendants did the acts upon which these claims are based ......................................1

    2.  Whether the grant of summary judgment on Berryhill's, Dunn's and Crespo's Fourth Amendment claims against Mark Feddersen and Gary Smith should be affirmed where some of the claims are barred by the statute of limitations and where there is no evidence that these defendants caused a constitutional deprivation ...........1

    3.  Whether summary judgment on all claims against Mark Feddersen and Gary Smith should be affirmed on the basis of qualified immunity where the plaintiffs failed to rebut the defendants' presumption of immunity ...........................................................1

    4.  Whether the award of taxable costs should be affirmed where Plaintiffs failed to rebut the presumption in favor of such an award..........2

III.  Statement of Facts...........................................................................2

    A.  Plaintiff Berryhill's claims against the Tacoma defendants .....................4

    B.  Plaintiff Dunn's claims against the Tacoma defendants...........................5

    C.  Plaintiff Crespo's claims against the Tacoma defendants ........................5

D.    §1983 Claims against the City of Tacoma ............................................. 6

IV.  Summary of Argument ................................................................................ 7

V.  Reviewability and Standards of Review .............................................. 9

VI.  Argument ..................................................................................................... 10

    A.    Plaintiffs are bound by the stipulation limiting their claims .................... 10

    B.    Plaintiffs' claims are largely time barred .................................................. 11

    C.    Plaintiffs' claims against Gary Smith and Lt. Mark Feddersen
        fail as a matter of law because there is no evidence these
        defendants caused a constitutional deprivation ....................................... 14

            1.    There is no credible or competent evidence that
                 inhibiting the plaintiffs' speech was a substantial
                 or motivating factor in Feddersen's or Smith's conduct ......... 15

            2.    Plaintiffs will be unable to establish Fourth
                 Amendment violation .............................................................. 21

    D.    Feddersen and Smith are presumed immune from suit
        pursuant to the doctrine of qualified immunity, and plaintiffs
        failed to overcome that presumption ....................................................... 25

    E.    The district court properly exercised is discretion
        in taxing allowable costs in favor of the defendants ................................ 28

VI.  Conclusion .................................................................................................. 33

VII.  Statement of Related Cases ..................................................................... 34

# TABLE OF AUTHORITIES

**Table of Cases:**

Anderson v. Creighton,
483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).........................25

Anheuser-Busch, Inc. v. Natural Beverage Distribs.,
69 F.3d 337, 345 n.4 (9th Cir. 1995)..........................................14

Ass'n of Mexican-American Educators v. California,
231 F.3d 572 (9th Cir. 2000).....................................................31

Bagley v. CMC Real Estate Corp.,
923 F.2d 758, 760 (9th Cir. 1991)..............................................12

Beyene v. Coleman Security Svcs., Inc.,
854 F.2d 1179, 1181 (9th Cir. 1988)...........................................14

Butz v. Economou,
438 U.S. 478, 507-508, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) ............25

Casteel v. Pieschek,
3 F.3d 1050, 1053 (7th Cir. 1993)...............................................27

Celotex Corp. v. Catrett,
477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986) ................17

Chavez v. Tempe Union High School District No. 213,
565 F.2d 1087, 1095 (9th Cir. 1977)...........................................32

Cherry v. Champion International Corp.,
186 F.3d 442, 446 (4th Cir. 1999)..............................................31

Clavette v. Sweeney,
132 F.Supp.2d 864, 874-75 (D. Or. Jan. 30, 2001) .................................12

Davis v. Scherer,
468 U.S. 183, 197, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).................27

Dawson v. City of Seattle,
435 F.3d 1054, 1070 (9th Cir. 2006)..........................................................28

De la O v. Hous. Auth. of El Paso,
417 F.3d 495, 501 (5th Cir. 2005)..............................................................24

Doyle v. City of Medford,
606 F.3d 667, 673 (9th Cir. 2010)..............................................................29

Dyniewicz v. United States,
742 F.2d 484 (9th Cir. 1984).......................................................................13

Flint v. Haynes,
651 F.2d 970, 973-74 (4th Cir. 1981) ........................................................31

Gibson v. United States,
781 F.2d 1334 (9th Cir. 1986), cert. denied, 479 U.S. 1054 (1987).........12

Hoesterey v. Cathedral City,
945 F.2d 317, 319 (9th Cir. 1991)..............................................................12

Independent Iron Works, Inc. v. United States Steel Corp.,
322 F.2d 656, 678-79 (9th Cir. 1963), cert. denied, 375 U.S. 922,
84 S. Ct. 267, 11 L. Ed. 2d 165 (1963) ...............................................29, 30

Jones v. R.R. Donnelley & Sons Co.,
541 U.S. 369, 377-79, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004) ..........12

Katz v. United States,
389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)......................23

Link v. Wabash R. Co.,
370 U.S. 626, 633-634, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ..............11

Malley v. Briggs,
475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).........................26

Malacara v. Garber,
353 F.3d 393, 405 (5th Cir. 2003)..............................................................24

McEuen v. Riverview Bancorp, Inc.,
2104 U.S. Dist. LEXIS 72177 (W.D. Wash. May 27, 2014) ..................................29

Mendocino Envtl. Ctr. v. Mendocino County,
192 F.3d 1283, 1300-1301 (9th Cir. 1999) ..............................................................16

Michigan v. Fisher,
558 U.S. 45, 47, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009)....................................22

Mitchell v. Forsyth,
472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)........................................25

Nat'l Info Servs. v. TRW, Inc.,
51 F.3d 1470, 1472 (9th Cir. 1999).........................................................................31

Nelson v. Pima Community College,
83 F.3d 1075, 1081-82 (9th Cir. 1996) ....................................................................14

NOW v. Bank of California, Nat'l Asso.,
680 F.2d 1291, 1294 (9th Cir. Cal. 1982)................................................................10

Pearson v. Callahan,
555 U.S. 223, 129 S. Ct. 808, 815, 818, 172 L. Ed. 2d 565 (2009)..................25, 26

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,
507 U.S. 380, 396, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).................................11

Pittman v. Gen. Nutrition Corp.,
515 F. Supp. 2d 721, 731-732 (S.D. Tex. 2007)......................................................25

Rose v. Rinaldi,
654 F.2d 546, 547 (9th Cir. 1991)............................................................................12

Saucier v. Katz,
533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)...............................26

Save Our Valley v. Sound Transit,
335 F.3d 932, 945 (9th Cir. 2003)............................................................................32

Squaw Valley Dev. Co. v. Goldberg,
375 F.3d 936, 943 (9th Cir. 2004) ...........................................................10

Stanley v. Univ. of S. Cal.,
178 F.3d 1069, 1079 (9th Cir. 1999).......................................................33

Stanton v. Sims,
__ U.S. __, 134 S. Ct. 3, 187 L. Ed. 2d 341 (2013)................................26

Tatro v. Kervin,
41 F.3d 9, 18 (1st Cir. 1994) ...................................................................16

United States v. Choate,
576 F.2d 165, 175 (9th Cir. 1978)...........................................................18

United States v. Diaz-Castaneda,
494 F.3d 1146, 1152 (9th Cir. 2007).......................................................22

United States v. Dunkel,
927 F.2d 955, 956 (7th Cir. 1991)...........................................................24

United States v. Mageno,
762 F.3d 933, 940 (9th Cir. 2014)............................................................4

United States v. Shryock,
342 F.3d 948, 978 (9th Cir. 2003)...........................................................23

United States v. Taketa,
923 F.2d 665, 677 (9th Cir. 1991)...........................................................23

United States v. White,
401 U.S. 745, 752, 91 S. Ct. 1122, 28 L. Ed. 2d 453 (1971)...................18

Wallace v. Kato,
549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)...............11

Wallace v. USAA Life Gen. Agency, Inc.,
862 F. Supp. 1062 (D. Nev. 2012).........................................................19

Wilson v. Garcia,
471 U.S. 261, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)..........................................12

## Regulations and Rules:

28 U.S.C. §1291 ..........................................................................................................1

28 U.S.C. §1920..........................................................................................................29

42 U.S.C. §1983...................................................................................................4, 10

Evidence Rule 83 ........................................................................................................27

Local Civil Rule 54(d) ......................................................................................28, 29

Fed.R.Civ.P. 54(d) ............................................................................10, 28, 29, 31

Fed.R.Civ.P. 56(e)......................................................................................................14

U.S. Const. Amend. IV .........................................................................................22

# I.    Jurisdictional Statement

## A.    District Court's Jurisdiction

The Tacoma appellees (hereinafter "defendants") agree with appellants' (hereinafter "plaintiffs") statement of the district court's jurisdiction.

## B.    Court of Appeal's Jurisdiction

The court of appeals has appellate jurisdiction over final decisions of the district courts.  28 U.S.C. §1291.  The defendants agree that this Court has jurisdiction over the instant appeal.

## C.    Timely Notice of Appeal

The defendants agree that the instant appeal is timely.

# II.    Issues for Review

1.    Whether the grant of summary judgment on Berryhill, Dunn, and Crespo's First Amendment claims against Mark Feddersen and Gary Smith should be affirmed where plaintiffs failed to adduce evidence that the defendants acted with the requisite intent and where there is no evidence the defendants did the acts upon which these claims are based.

2.    Whether the grant of summary judgment on Berryhill's, Dunn's and Crespo's Fourth Amendment claims against Mark Feddersen and Gary Smith should be affirmed where some of the claims are barred by the statute of limitations and where there is no evidence that these defendants caused a constitutional deprivation.

3.    Whether summary judgment on all claims against Mark Feddersen and Gary Smith should be affirmed on the basis of qualified immunity where the plaintiffs failed to rebut the defendants' presumption of immunity.

4.      Whether the award of taxable costs should be affirmed where plaintiffs failed to rebut the presumption in favor of such an award.

## III.    Statement of Facts

Plaintiffs were arrested during antiwar protests at the Port of Olympia in November 2007, as they protested use of the Port to transport military vehicles from Fort Lewis.  They allege that some of the arrests were preemptive and were based on spying that was conducted by defendant John Towery, among others, on the Port Militarization Resistance (PMR) and Students for a Democratic Society (SDS).  Plaintiffs have asserted claims against numerous city, state and federal agencies and individuals including the Tacoma defendants, the City of Olympia, the Olympia Police Department, and numerous individuals.  SER 1878 - 1927 (Third Amended Complaint).

The crux of this case[1] centers on John Towery's actions while acting as a civilian informant for Pierce County Detective Sergeant Chris Adamson of the Regional Intelligence Group and Thomas Rudd's alleged knowledge of Towery's actions, which the plaintiffs allege was "spying" in violation of their First Amendment Rights.  In August 2010, in their Second Amended Complaint, plaintiff added the City of Tacoma, Gary Smith and Mark Feddersen as defendants to this

---

[1] In addition to the "spying allegations" involving Towery and Rudd, the operative complaint in this case focuses on events that occurred during the November 2007 protest at the Port of Olympia.

2

litigation.  See ER 3412 (docket entries for August 10, 2010).  Prior to the Tacoma

defendants being served, however, the district court ordered plaintiffs to file another

amended complaint.  See ER 3413 (docket entry #52).  In response, plaintiffs filed

the Third Amended Complaint, the operative complaint in this matter.  SER 1878 –

1927.

Because it was unclear in the Third Amended Complaint which claims were

being asserted against the Tacoma defendants, these defendants sought clarification

from plaintiffs as to the claims applicable to the Tacoma defendants.  In November

2011, plaintiffs executed a stipulation clarifying which plaintiffs were pursuing

claims against the Tacoma defendants, and further outlining what those claims were.

SER 1861 - 1862.  As stated in the stipulation, all plaintiffs represented that no

claims for false arrest, false imprisonment, assault & battery or malicious

prosecution were being asserted against the Tacoma defendants.  Moreover, per the

stipulation, the only plaintiffs pursing claims against the Tacoma defendants were

Brendan Dunn, Jeffrey Berryhill and Glenn Crespo[2].  See Dkt. #140.

---

[2] In the Plaintiffs-Appellants' Consolidated Opening Brief, they argue that the
Tacoma defendants violated Plaintiff Robbin's Fourth Amendment rights by using
excessive force against her in March 2007, during protests at the Port of Tacoma.
Appellants' Opening Brief, p. 16.  Per the stipulation, Plaintiff Robbins waived any
claims against these defendants.  Moreover, as outlined in Section VI.B, *supra*, any
claims stemming from the March 2007 protests are timed barred.

**A.** **Plaintiff Berryhill's claims against the Tacoma defendants:**

As outlined in the stipulation between the plaintiffs and the Tacoma

defendants, Plaintiff Berryhill asserted violations of his rights under the First, Fourth,

Fifth, and Sixth Amendments[3], against the Tacoma defendants, as well as violations

of Article I, §5 and §7 of the Washington State Constitution[4].  Plaintiff Berryhill's

claims were based upon his contention that defendants Smith and Feddersen joined

and/or monitored the "Oly-22 listserv," which plaintiffs contend was a confidential

attorney-client listserv created for the purpose of assisting the defense in a criminal

case in the Olympia Municipal Court in March 2007.  See SER 1644 – 1649

(Berryhill discovery responses).  See also Plaintiffs-Appellants' Consolidated

---

[3] On summary judgment, Berryhill and Dunn did not respond to the motion with regard to their Fifth and Sixth Amendment claims, thereby conceding that they were not pursuing such claims.  ER 71.  Consequently, the district court granted the Tacoma defendants' motion for summary judgment on Berryhill's and Dunn's Fifth and Sixth Amendment claims and plaintiffs did not assign error to this portion of the district court's order and did not brief these claims on appeal.  Therefore, Berryhill and Dunn's Fifth and Sixth Amendment claims are not at issue herein.  United States v. Mageno, 762 F.3d 933, 940 (9th Cir. 2014) ("Generally, an issue not raised in an opening brief will not be considered.").

[4] Similarly, plaintiffs (Berryhill, Dunn and Crespo) did not respond to the Tacoma defendants' motion for summary judgment on the issue of their claims for money damages for alleged violations of the Washington State Constitution.  Because of this, the district court correctly concluded that plaintiffs had conceded that there was no cognizable claim for alleged violations of the Washington Constitution and granted summary judgment.  Plaintiffs did not assign error to this portion of the district court's order and did not brief these claims on appeal.  Consequently, plaintiffs' claims under the Washington Constitution are not at issue herein.

Opening Brief (hereinafter Appellants' Opening Brief), p. 73 – 78. Plaintiff Berryhill also contends he was falsely arrested and maliciously prosecuted[5] during the March 2007 protests at the Port of Tacoma. Appellants' Opening Brief at 17.

### B.     Plaintiff Dunn's claims against the Tacoma defendants:

Pursuant to the stipulation, Plaintiff Dunn also asserted claims against the Tacoma defendants under 42 U.S.C. §1983 for violations of his First, Fourth, Fifth, and Sixth Amendment rights, and claims for violations of his civil rights pursuant to Article I, §5 and §7 of the Washington State Constitution.   Like Berryhill, Plaintiff Dunn's claims were primarily predicated upon his contention that defendants Smith and Feddersen joined or monitored the Oly-22 listserv. See SER 1668 – 1674 (Dunn's discovery responses). Plaintiff Dunn also contended that he was falsely arrested in June 2007 and that he was subjected, by all defendants, to illegal espionage, and that his license plate information was shared amongst law enforcement personnel. SER 1675 – 1679. See also Appellants' Opening Brief, p. 28; p. 53 – 53; p. 56; and p. 72

### C.     Plaintiff Crespo's claims against the Tacoma defendants:

Pursuant to the stipulation, Plaintiff Crespo asserted that his First and Fourth Amendment rights were violated, as well as his state constitutional rights under

---

[5] Again, pursuant to the stipulation executed by plaintiffs' counsel, all plaintiffs waived any claims of malicious prosecution as against the Tacoma defendants. SER 1861.

Article I, §5 and §7 of the Washington State Constitution. Plaintiff Crespo also asserted an outrage (intentional infliction of emotional distress) against the Tacoma defendants, a claim he abandoned on summary judgment[6]. ER 72. Plaintiff Crespo's claims were based primarily on his contention that at some point in 2007, an unnamed Tacoma Police Officer contacted Crespo's landlord and identified Crespo as a terrorist, which strained Crespo's relationship with his landlord. See SER 1697 – 1698 (Crespo's discovery responses). See also Appellants' Opening Brief, p. 21; p. 53. He also asserted his rights were violated when a video camera was placed on a utility pole outside his then-residence, the Pitch Pipe Information Shop, to monitor the activities there. SER 1700; Appellants' Opening Brief, p. 21 – 22; p. 37; p. 51 – 52.

### D. §1983 Claims against the City of Tacoma:

In their responses to discovery requests, plaintiffs purported to assert §1983 claims against the City of Tacoma for an alleged failure to train and supervise its police officers. See SER 1649 – 1651; SER 1652 – 1653; SER 1676 – 1679; SER 1697 – 1699; SER 1700 - 1701. Plaintiffs have failed, however, to pursue any such claims on appeal. Plaintiffs have not briefed the elements of a municipal

---

[6] As with several other claims, Plaintiff Crespo did not respond to the defendants' motion for summary judgment on his outrage claims, thereby conceding that he had no such claim. On that basis, the district court granted summary judgment. ER 72. Plaintiff Crespo did not assign error to this portion of the district court order and has not briefed the issue on appeal. Consequently, the outrage claim is not at issue herein.

6

liability claim against the City of Tacoma and have identified no evidence in the record to establish the *prima facie* elements of such a claim. Consequently, any §1983 claims plaintiffs Berryhill, Dunn and Crespo may have been pursuing in the district court against the City of Tacoma have been waived and are not at issue herein[7].

## IV. Summary of Argument

In the instant case, plaintiffs have sued Mark Feddersen and Gary Smith for doing their jobs. Plaintiffs' entire case against Lt. Feddersen and Mr. Smith is based on the contention that by sharing information with other law enforcement personnel and agencies and by assisting other law enforcement agencies in preparing for protest events, these defendants violated plaintiffs' First and Fourth Amendment rights. As demonstrated herein, there is no evidence – literally no evidence – to establish that either Lt. Fedderson or Mr. Smith violated anyone's

---

[7] In their opening brief, plaintiffs make vague reference to a number of incidents that they claim occurred, involving unidentified Tacoma police officers. For example, plaintiff Crespo claims that during a protest in November 2007, Crespo was struck by an unidentified Tacoma police officer and arrested. Appellants' Opening Brief, p. 21. This alleged incident, however, is irrelevant in the context of the instant appeal, given the officer who allegedly committed these torts was not identified, is not a party to this litigation, and plaintiffs have abandoned any §1983 municipal liability claims. Similarly, plaintiffs make a vague assertion that in July and August of 2008, "several incidents occurred where OPD and TPD followed, harassed, and detained Berryhill, Grande, and other protestors for merely attending protests." In the absence of the specific facts underlying these incidents and a party against whom claims could be asserted for these incidents, plaintiffs' allegations concerning this incident are not material to the instant appeal.

7

constitutional rights. The district court did not err in granting summary judgment and the district court's order should be affirmed, in all respects.

To begin, plaintiffs are bound by the stipulation they executed, limiting their claims against the Tacoma defendants in this matter. Moreover, any claims that Berryhill, Dunn or Crespo are asserting for incidents that occurred prior to November 2007 are time barred and not actionable, given that the Tacoma defendants were not effectively added to this litigation until November 2010.

With regard to plaintiffs' First Amendment claims, there is a complete absence of evidence to establish that anything Lt. Feddersen or Mr. Smith did was undertaken with an intent to deter their expressive activities. Any actions undertaken by these defendants were reasonable and permissible and in furtherance of legitimate law enforcement objectives. Neither Feddersen nor Smith joined the Oly22 listserv, and even if they had, doing so would not have been a constitutional violation since the listserv was open source, available to anyone who wanted to join. Similarly, there is no evidence that either Feddersen or Smith contacted Crespo's landlord or anyone else in an effort to facilitate activities intended to chill plaintiffs' expressive activities.

With regard to plaintiffs' Fourth Amendment claims, as with their First Amendment claims, the plaintiffs failed to adduce any specific evidence to establish that either Mark Feddersen or Gary Smith violated their Fourth

8

Amendment rights. Other than claims that are timed barred, the only other Fourth

Amendment claim being asserted against these defendants stem from the

installation of a camera on a utility pole outside of Crespo's house. Crespo claims

that this camera observed and recorded private activities occurring in the house,

but even a cursory review of the evidence establishes that the camera captured only

those things visible from a public street. Moreover, Mr. Crespo has no factual

basis for his allegation, since he never actually observed what the camera captured.

And even if this Court were to find a material question of fact on any of

these claims, Lt. Feddersen and Mr. Smith would still be entitled to summary

judgment on the basis of qualified immunity. These defendants are presumed to be

immune from suit and plaintiffs bear the burden of rebutting that presumption, a

burden they have failed to carry.

Finally, the award of costs to all defendants should be affirmed. As the

prevailing parties, there is a presumption that the defendants are entitled to taxable

costs and plaintiffs failed to establish that the taxation of costs was an abuse of

discretion.

## V. Reviewability and Standards of Review

"The district court's grant of summary judgment is reviewed *de novo*.

Viewing the evidence in the light most favorable to the non-moving party, [the

appellate court] must decide whether there are any genuine issues of material fact

9

and whether the district court correctly applied the relevant substantive law.  The district court's grant of summary judgment may be affirmed on any ground supported by the record."  (internal citations omitted)  Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 943 (9th Cir. 2004).

With respect to the appeal of the taxation of costs, "[c]osts are awarded to the prevailing party in civil actions as a matter of course absent express statutory provision, 'unless the court otherwise directs.' Fed.R.Civ.P. 54(d). The standard of review is abuse of discretion."  NOW v. Bank of California, Nat'l Asso., 680 F.2d 1291, 1294 (9th Cir. Cal. 1982).

## VI.  Argument

### A.  Plaintiffs are bound by the stipulation limiting their claims.

In November 2011, the Tacoma defendants sought a stipulation from plaintiffs' counsel in order to clarify the claims that were being asserting against these defendants.  In this stipulation, as filed with the district court, all plaintiffs represented that no claims for false arrest, false imprisonment, assault & battery or malicious prosecution were being asserted against the Tacoma defendants.  Dkt. 140.  Additionally, all plaintiffs other than Dunn, Berryhill and Crespo represented that they were not bringing any claims at all against the Tacoma defendants.  Id. Then, in response to the Tacoma defendants' summary judgment motion and now

10

in the context of the instant appeal, plaintiffs attempt to assert claims that they have expressly disavowed.

Plaintiffs are bound by the stipulation their attorney executed, on their behalf, more than two years before the defendants' summary judgment motion was filed. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (recognizing the general rule that clients must be accountable for the acts and omissions of their attorneys); Link v. Wabash R. Co., 370 U.S. 626, 633-634, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ("each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"). After the execution and filing of the stipulation, the parties engaged in extensive discovery, discovery that was framed by plaintiffs' representations as to the claims being asserted against these defendants. Moreover, at no time did plaintiffs seek to modify or set aside the stipulation. As a result, plaintiffs are bound by the terms of the stipulation and cannot be allowed to pursue any claims that were previously disavowed.

## B.   **Plaintiffs' claims are largely time barred.**

Because Congress did not enact a specific statute of limitations for claims brought pursuant to 42 U.S.C. §1983, the statute of limitations is determined by the law of the state in which the action arose. Wallace v. Kato, 549 U.S. 384, 387, 127

S.Ct. 1091, 166 L. Ed. 2d 973 (2007); <u>Wilson v. Garcia</u>, 471 U.S. 261, 105 S.Ct.

1938, 85 L. Ed. 2d 254 (1985)[8].  The Ninth Circuit has determined that the

appropriate statute of limitations for a §1983 action brought in Washington state is

the three-year limitation period of RCW 4.16.080(2).  <u>Bagley v. CMC Real Estate

Corp.</u>, 923 F.2d 758, 760 (9th Cir. 1991); <u>Rose v. Rinaldi</u>, 654 F.2d 546, 547 (9th

Cir. 1991).

While state law establishes the statute of limitations applicable to §1983

claims, "the determination of the point at which the limitations period begins to run

is governed solely by federal law."  <u>Hoesterey v. Cathedral City</u>, 945 F.2d 317, 319

(9th Cir. 1991).  "Under federal law, the touchstone for determining the

commencement of the limitations period is notice: 'a cause of action generally

accrues when a plaintiff knows or has reason to know of the injury which is the

basis of his action.'"  <u>Id</u>.  Thus, once plaintiff knows of the fact of injury and the

immediate physical cause of the injury, the cause of action accrues, *even if the

plaintiff does not know who inflicted the harm*.  <u>Clavette v. Sweeney</u>, 132

F.Supp.2d 864, 874-75 (D. Or. Jan. 30, 2001) (citing <u>Gibson v. United States</u>, 781

---

[8] <u>Wilson v. Garcia</u> was later superseded by statute for actions arising under federal
statutes that were enacted after December 1, 1990 (e.g., claims made possible by a
post-1990 enactment), which is not applicable here.  <u>See Jones v. R.R. Donnelley
& Sons Co.</u>, 541 U.S. 369, 377-79, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).

F.2d 1334 (9th Cir. 1986), cert. denied, 479 U.S. 1054 (1987); <u>Dyniewicz v.</u>

<u>United States</u>, 742 F.2d 484 (9th Cir. 1984)).

      In the instant case, to the extent that plaintiff Berryhill, or any other

plaintiff[9], contends that an arrest in 2007 violated his/her First or Fourth

Amendment rights in this matter, any such claims accrued at the time of arrests—

in March 2007.  Appellants' Opening Brief, p. 17.  The Tacoma defendants were

not effectively added to the instant litigation, however, until November 2010.

Given that the plaintiffs did not timely bring their claims against the Tacoma

defendants within the three-year statute of limitations, such claims are time-barred

as a matter of law.  Similarly, any claims predicated upon an alleged infiltration of

the Oly-22 listserv would have accrued in March 2007, and any such claims are

also time barred as a matter of law.

---

[9] In their opening brief, appellants assert that the district court erred in dismissing their excessive force and false arrest claims against the City of Tacoma and the City of Olympia.  Appellants' Opening Brief, p. 54-57.  Plaintiffs do not, however, identify the specific incidents that form the basis for such claims as against the Tacoma defendants.  Therefore, the defendants can only assume that the incidents at issue are those that occurred during the March 2007 protests at the Port of Tacoma.  See <u>Id</u>. at p. 16 – 17.  Additionally, in his deposition, Dunn claims false arrest and malicious prosecution for an incident that occurred in June 2007.  SER 682, lines 13 – 18.

**C.** **Plaintiffs' claims against Gary Smith and Lt. Mark Feddersen fail as a matter of law because there is no evidence these defendants caused a constitutional deprivation.**

With regard to the liability of the individually named defendants, Gary Smith and Lt. Mark Feddersen, in order to make a *prima facie* case, plaintiffs were required to identify the specific acts or conduct undertaken by each defendant that served as the basis for their claims, and further required to demonstrate that the conduct at issue caused a constitutional deprivation. Moreover, plaintiffs were required to do through competent, admissible evidence, since only admissible evidence may be considered on summary judgment. FRCP 56(e); Beyene v. Coleman Security Svcs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988). "Inadmissible hearsay evidence may not be considered on a motion for summary judgment." Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 n.4 (9th Cir. 1995). Further, "[m]ere…speculation [does] not create a factual dispute for purposes of summary judgment." Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

It is important to note, at the outset, that plaintiffs did not adduce any evidence that Feddersen or Smith did anything that directly affected the plaintiffs. In their appellate brief, the only conduct that plaintiffs attribute to Feddersen and Smith is as follows:

14

- Smith worked as a Regional Intelligence Group (RIG) analyst, and in that capacity, received, reviewed and shared information with other law enforcement officers and agencies (Appellants' Opening Brief, p. 7, p. 15, p. 19);

- Feddersen served a support role during the 2007 Port of Tacoma protests (Id. at p. 7);

- Feddersen and Smith both attended RIG meetings (Id. at p. 12); and

- Feddersen attended meetings with Aberdeen Police Department in advance of protests expected at the Port of Aberdeen (Id. at. p. 18).

Even if the court were to accept each of these allegations as true for the purposes of the instant appeal, this conduct does not contravene plaintiffs' First or Fourth Amendment rights.  In the instant case, plaintiffs failed to adduce any competent or credible evidence to establish that either Feddersen or Smith violated plaintiffs' constitutional rights, and the district court did not err in so holding.

       1.    <u>There is no credible or competent evidence that inhibiting the plaintiffs' speech was a substantial or motivating factor in Feddersen's or Smith's conduct.</u>

In order to establish a prima facie case under §1983 for a First Amendment violation, the plaintiffs were required to show that Feddersen's and Smith's actions deterred or chilled the plaintiffs' political speech and that inhibiting plaintiff's speech was a "substantial or motivating factor" in the defendant's conduct.

15

Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). Plaintiffs' failure to adduce evidence that these defendants' actions were substantially motivated by the content of plaintiffs' speech was fatal to their First Amendment claims. Id., 192 F.3d at 1300-1301. See also Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994) (plaintiff demonstrates First Amendment violation if an "officer's intent or desire to curb the expression was the determining or motivating factor in making the arrest").

For example, with regard to plaintiff Berryhill's broad assertions that he was prevented from exercising his First Amendment rights as a result of these defendants' actions, as outlined above, Berryhill adduced no evidence to show that Feddersen or Smith had any direct involvement in any of the incidents that Berryhill claims caused him to cease exercising his First Amendment rights. Plaintiffs failed to adduce any evidence to support the assertions that Feddersen or Smith were responsible for engaging in a pattern of conduct including multiple false arrests, bogus criminal charges, ongoing harassment and spying. See, e.g., SER 662, line 9 through SER 663, line 19[10]. In fact, none of the plaintiffs with claims pending against Feddersen or Smith were able to adduce any evidence that

---

[10] "Q: Do you personally have knowledge of any facts to suggest that the Tacoma police did anything to encourage another law enforcement agency to stop you? A: I'm not aware. Q: As you sit here today, are you personally aware of any facts to suggest that the Tacoma Police Department did anything to encourage another law enforcement agency to arrest you? A: I'm not aware."

these defendants acted with an intent to chill or deter plaintiffs' protected First Amendment activities. In light of the complete dearth of evidence to support an essential element of plaintiffs' prima facie First Amendment case, these claims fail, as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

The Oly22 listserv:

As noted above, in the district court, plaintiffs Dunn and Berryhill predicated their First Amendment claims largely on their contention that defendants Smith and Feddersen joined and/or monitored the Oly 22 listserv. However, this contention was wholly speculative. See, e.g., SER 651, lines 8-13 ("Q. Okay. There's an allegation in there that the Tacoma Police Department produced discovery in other matters that its operative had infiltrated listservs in Olympia in March of 2007. Do you have any knowledge of – personal knowledge of facts to support that allegation? A: No."). Moreover, plaintiff's allegation concerning the listserv was contradicted by the evidence. The only competent and credible evidence in the record established that neither defendant Smith nor defendant Feddersen joined the Oly-22 listserv, nor did they encourage anyone else to join. SER 1630; 1634 – 1635.

On appeal, plaintiffs seem to have abandoned the argument that Feddersen and Smith joined the listserv, and instead, focus on the fact that defendant Towery

shared a copy of the juror list obtained from the listserv with Gary Smith. Appellants' Opening Brief, p. 15; p. 73-78. Plaintiffs do not explain, however, how Gary Smith would have violated their constitutional rights by receiving a copy of the juror list, when he did not join the listserv that plaintiffs contend was private.

Moreover, the act of joining the Oly22 listserv could not serve as a basis for this, or any other, claim, as the listserv was open to the public such that anyone who wanted to join it, could join it. SER 1710 – 1712 (email concerning the lack of security for the listserv and noting that a reporter from the Olympian had joined the listserv to test security measures); SER 1720, line 11 to SER 1721, line 6; SER 1724, lines 1 – 8. See also United States v. Choate, 576 F.2d 165, 175 (9th Cir. 1978)("This Court has repeatedly held that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.") (quoting United States v. White, 401 U.S. 745, 752, 91 S. Ct. 1122, 28 L. Ed. 2d 453 (1971)). Plaintiffs cannot assert a privacy interest, or any other constitutionally protected interest, in information they voluntarily put into a public forum.

18

The conversation with Crespo's landlady:

Plaintiff Crespo alleges that his First Amendment rights were violated when an unidentified Tacoma Police officer apparently spoke with his landlady, identifying Mr. Crespo as a terrorist, with the intent to chill his free speech. The district court correctly held that this allegation did not establish an actionable constitutional deprivation.

To begin, there is no competent evidence to establish this allegation. This alleged statement (the exact nature of which is unknown), made by an unidentified individual at an unknown time, to plaintiff's landlady (whose full name Mr. Crespo cannot even remember) cannot be used to support plaintiff's prima facie case or defeat the instant motion for summary judgment[11]. By his own admission, Mr. Crespo was not present for this alleged conversation and does not know of anyone other than his landlady, "Beverly," who heard these alleged comments. SER 1760, line 16 through SER 1761, line 16. See also SER 1776, lines 14 – 25 (concerning

---

[11] Plaintiffs argue that the form of the evidence (Mr. Crespo's double hearsay statement) is not important, because they can simply call the landlady to testify at trial. This assertion is more than a little surprising, since plaintiffs were utterly unable to identify the landlady by her full name or business. Moreover, she was never disclosed as a witness in either plaintiff's FRCP 26 disclosures or in response to any discovery requests. Given that they did not provide even her complete name until more than 3 months after the discovery cutoff, the district court correctly concluded that plaintiff could not rely on this witness in opposition to summary judgment. See e.g., Wallace v. USAA Life Gen. Agency, Inc., 862 F. Supp. 1062 (D. Nev. 2012)(exclusion of witnesses proper under FRCP 26 who were never identified as potential witnesses or even as persons with knowledge during the discovery period).

not knowing landlady's full name). Consequently, Mr. Crespo's testimony

concerning this alleged conversation is hearsay and is not admissible[12].

Moreover, in his deposition, Crespo testified that "Beverly" had told him the

alleged statements were made by an unidentified Tacoma Police sergeant, not by

Gary Smith (who is not a commission officer) or by Lt. Mark Feddersen. SER

1756, lines 15-20. See also SER 1759, line 20 through SER 1760, line 15. And

the only way that liability could attach for statements made by a Tacoma City

employee other than Smith or Feddersen (assuming for the sake of argument only

that such a statement constitutes a constitutional violation) would be in the context

of municipal liability, a claim that plaintiffs have abandoned.

Finally, Crespo's claims that this alleged conversation resulted in

unwarranted harassment sufficient to force him to move are disingenuous, at best.

By his own admission, the "harassment" that Crespo claims consists of the

landlady telling the residents of the house that they could not leave their bikes in

front of the house and they needed to mow the lawn. SER 59, line 9 through SER

1769, line 3. In fact, the only direct contact that Mr. Crespo had with Beverly that

---

[12] This statement is inadmissible hearsay for three reasons: (1) no exception to the
hearsay rule applies, (2) the statement consists of hearsay within hearsay, without a
qualifying exception for each level of hearsay and (3) the statement bears no
indicia of reliability in view of the surrounding circumstances.

he characterized as "harassment" was when she showed up one day and learned that he had a dog, apparently in contravention of the lease. SER 1768, lines 6 – 24.

Like the other plaintiffs, plaintiff Crespo is also unable to point to any credible evidence which establishes that the defendants Smith and Feddersen were connected in any way to his alleged constitutional deprivations. In short, plaintiffs' claims that Smith's and Feddersen's conduct was motivated by an intent to curtail plaintiffs' free speech are wholly speculative. With regards to these defendants, plaintiffs presented no competent, admissible evidence to show that any conduct undertaken by Feddersen or Smith was done with the intent to chill the plaintiffs' expression, and therefore, the district court did not err in dismissing their First Amendment claims.

> 2.    Plaintiffs will be unable to establish a Fourth Amendment violation.

Plaintiffs also allege their Fourth Amendment rights were violated by these defendants. As noted herein in Section VI.B, any claims based on arrests in March and June of 2007 are time-barred. Plaintiffs Dunn and Berryhill also contend—proffering only the most vague and conclusory statements—that their Fourth Amendment rights were violated because law enforcement databases shared plaintiffs' names and license plates. See, e.g., SER 1652; SER 1678. To the extent plaintiffs contend that they had some sort of privacy interest in their driver's licensing and plate information, they are mistaken. There is no privacy interest in

21

one's licensing information. United States v. Diaz-Castaneda, 494 F.3d 1146 (9th

Cir. 2007)[13]. Moreover, plaintiffs have identified no evidence to support plaintiffs'

bald assertions that law enforcement agencies statewide had been instructed to by

the Tacoma defendants to pull over or otherwise "harass" the plaintiffs repeatedly.

See Exhibit 2 to Homan Affidavit, Interrogatory No. 8. Plaintiffs' claims fail as a

matter of law.

Plaintiff Crespo further alleges his Fourth Amendment rights were violated

when a video camera was mounted on a utility pole and was directed at the front

door of his residence, the Pitch Pipe Information Shop. The Fourth Amendment

protects the "right of the people to be secure in their persons, houses, papers, and

effects against unreasonable searches and seizures." U.S. Const. Amend. IV. "The

touchstone of the Fourth Amendment is reasonableness." Michigan v. Fisher, 558

U.S. 45, 47, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009). "To invoke the Fourth

Amendment protections, a person must show that he had a legitimate expectation

of privacy. A person demonstrates a legitimate expectation of privacy when that

person has a (1) subjective expectation of privacy, and (2) an objectively

---

[13] Moreover, the Supreme Court held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Casteneda, 494 F.3d at 1152 (internal citations omitted). Even if the police officer making the stop has an illicit motivation for his action, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. Given that there is no evidence that defendants directed other law enforcement agencies to "harass" plaintiffs, the plaintiffs cannot establish a Fourth Amendment violation on this basis.

reasonable expectation of privacy." United States v. Shryock, 342 F.3d 948, 978 (9th Cir. 2003) (internal citations omitted). Although plaintiff Crespo may have resided in the Pitch Pipe house, he was unable to establish that he had an expectation of visual privacy in the front of the property. "The Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). "[V]ideo surveillance does not in itself violate a reasonable expectation of privacy." United States v. Taketa, 923 F.2d 665, 677 (9th Cir. 1991). Indeed, "[v]ideotaping of suspects in public places….does not violate the fourth amendment; the police may record what they normally may view with the naked eye." Id.

Plaintiff Crespo complains that the district court favored the defendants' evidence on this issue over Mr. Crespo's evidence and in so doing, improperly decided a material question of fact. Plaintiffs' argument, however, has no merit. First, as his testimony made clear, Crespo has no personal knowledge to support his accusation that the camera was capturing private activity inside the home, since he never saw the video feed from the camera. ER 2594, lines 11-14. The only competent evidence on this issue came from people who actually did see the video feed, Gary Smith and Sgt. Chris Adamson with the Pierce County Sheriff's Office, and both of these people testified that the video feed from this camera showed only things that were visible from the public street. SER 1748, line 16 through SER

23

1749, line 2; SER 1635, line 16 – 20.    Plaintiff's belief that the video invaded his privacy, without more, is simply not sufficient to overcome summary judgment.

Second, there is no evidence to establish that either Fedderson or Smith actually installed the video camera or caused the camera to be installed.  In fact, the undisputed evidence was that Sgt. Adamson caused the camera to be installed on the pole.  <u>See</u> ER 2774, line 19-20. <u>See generally</u> ER 2774 – 2777.  Because there is literally no evidence that Feddersen or Smith played any role in the installation of the camera, and because plaintiffs have abandoned their municipal liability claims against the City, there can be no Fourth Amendment claim against Feddersen or Smith for this event and the district court did not err in so holding.

Finally, plaintiffs' complaint that the district court failed to give proper consideration to their evidence is flawed in that it ignores the burden that plaintiffs bore on summary judgment:

> "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso,* 417 F.3d 495, 501 (5th Cir. 2005) ("'Judges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)).

Pittman v. Gen. Nutrition Corp., 515 F. Supp. 2d 721, 731-732 (S.D. Tex. 2007).

Plaintiffs have no grounds to complain that the district court did not carefully

review and evaluate the thousands of pages of unexplained documents they put

into the record, as it was incumbent upon them to explain – in their briefing – what

the evidence was and how it supported their case.  And this they failed to do.

> **D.      Feddersen and Smith are presumed immune from suit pursuant
> to the doctrine of qualified immunity, and plaintiffs failed to
> overcome that presumption.**

Public officials acting within the scope of their discretionary authority are shielded

by a qualified immunity from suit.  Butz v. Economou, 438 U.S. 478,

507-508, 98 S. Ct. 2894, 2911, 57 L. Ed. 2d 895 (1978); Mitchell v. Forsyth, 472

U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (qualified immunity is

immunity from suit).

> Qualified immunity balances two important interests – the need to
> hold public officials accountable when they exercise power
> irresponsibly and the need to shield officials from harassment,
> distraction, and liability when they perform their duties reasonably.
> *The protection of qualified immunity applies regardless of whether the
> government official's error is "a mistake of law, a mistake of fact, or
> a mistake based on mixed questions of law and fact.*

(emphasis added)  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L.

Ed. 2d 565 (2009).  Thus, qualified immunity shields government officials so long

as their actions could reasonably have been thought consistent with the rights they

are alleged to have violated.  Anderson v. Creighton, 483 U.S. 635, 107 S. Ct.

3034, 97 L. Ed. 2d 523 (1987). The doctrine *"protects all but the plainly*

*incompetent or those that knowingly violate the law."* (emphasis added) <u>Malley</u>

<u>v. Briggs</u>, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). <u>See also</u>

<u>Stanton v. Sims</u>, __ U.S. ____, 134 S. Ct. 3, 187 L. Ed. 2d 341 (2013) (Supreme

Court emphasized that where the case law on an issue is not clear, although the

officer may have been mistaken in believing his actions were justified, the officer

was not plainly incompetent and therefore was entitled to qualified immunity).

In order to address the issue of the defendants' qualified immunity, the court

engages in a two-step analysis. <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct. 2151,

150 L. Ed. 2d 272 (2001). The first question is whether the facts, when taken in

the light most favorable to the party asserting the injury, show that the officer's

conduct violated a constitutional right. <u>Saucier</u>, 533 U.S. at 201. "If no

constitutional right would have been violated were the allegations established,

there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>,

533 U.S. at 201. "On the other hand, if a violation could be made out on a

favorable view of the parties' submissions, the [second] step is to ask whether the

right was clearly established." <u>Id</u>. While analysis of these steps in this sequence is

often appropriate, the courts have the sound discretion to decide "which of the two

prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand." <u>Pearson</u>, 129 S. Ct. at 818. *The*

26

*plaintiffs bear the burden of proving that the right allegedly violated was "clearly established" at the time of the conduct in question*[14]. (emphasis added) <u>Davis v. Scherer</u>, 468 U.S. 183, 197, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

In this case, as demonstrated herein, Feddersen and Smith did not violate any of the defendants' constitutional rights and consequently, there is no need to reach the second step of the qualified immunity analysis. Moreover, even if the court were to address the "clearly established" prong of the analysis first, the defendants could find no closely analogous case law to show that the law was clearly established such that Feddersen or Smith should have known that the conduct attributed to them was unlawful under either the First or Fourth Amendments and plaintiffs have pointed to no such authority. In their appellate brief, plaintiffs do not even address qualified immunity, even though the defense has been asserted and was raised on summary judgment.[15] As outlined herein, the

---

[14] Plaintiffs can satisfy their burden on the "clearly established" prong of the qualified immunity analysis in one of two ways: (1) they can identify closely analogous cases holding the conduct in question to be unconstitutional; or (2) they can offer evidence that the officers' conduct was so patently violative of the constitutional rights in question that a reasonable public official would know it to be unconstitutional without guidance from the courts. See <u>Casteel v. Pieschek</u>, 3 F.3d 1050, 1053 (7th Cir. 1993).

[15] The district court did not need to reach the issue of qualified immunity, having correctly concluded that plaintiffs failed to establish any constitutional deprivations, although in its oral ruling, the district court held that qualified immunity applied. ER 83. On appeal, if this Court were to find that there was a material question of fact on any particular claim, summary judgment would still be

controlling authority establishes that the conduct attributed to Feddersen and Smith was reasonable and constitutional. Plaintiffs' failure to rebut the defendants' presumption of immunity mandates that summary judgment in these defendants' favor be affirmed.

## E. The district court properly exercised its discretion in taxing allowable costs in favor of the defendants.

Plaintiffs' appeal from the taxation of costs, arguing that this was a novel case, the financial impact of taxing costs would have a chilling effect, and the economic disparity of the parties' position made the award unjust. As outlined herein, costs were properly taxed and the orders should be affirmed.

Federal Rule of Civil Procedure 54(d)(1) provides, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." FRCP 54(d) creates a *presumption* that the prevailing party is entitled to costs and the losing party bears the burden to show why costs should not be awarded. Dawson v. City of Seattle, 435 F.3d 1054, 1070 (9th Cir. 2006).

Under LCR 54(d), all motions for costs are to be decided by the Clerk. The rule states that "[t]he clerk shall allow such items specified in the motion which are properly chargeable as costs." LCR 54(d)(3). Thus, under the express language of

---

appropriate for Smith and Feddersen on the basis of qualified immunity and consequently, plaintiffs should have addressed the issue in their opening brief.

the rule, the Clerk's ruling on a motion to tax costs is non-discretionary and the Clerk must award those costs which are authorized by the court rule and applicable statutes. See Doyle v. City of Medford, 606 F.3d 667, 673 (9th Cir. 2010) ("The statute's use of the word 'shall,' then, constitutes 'mandatory language that restricts the discretion of the decisionmaker.'").

In the instant case, the City of Tacoma, and Defendants Feddersen and Smith prevailed on all claims brought against them. Therefore, they are entitled to taxable costs as allowed by FRCP 54(d), LCR 54(d) and the relevant federal statutes, and the award of taxable costs should be affirmed.

The costs sought by and awarded to the Tacoma defendants are all deposition-related expenses. 28 U.S.C. §1920 expressly allows for the taxation of costs for deposition transcripts that were "necessarily obtained for use in the case." In construing this statute, the Ninth Circuit has expressly held that the cost of an original and one copy of any deposition is an allowable and taxable cost to the prevailing party, *even if the deposition was not introduced into evidence or used at trial*, so long as at the time it was taken it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery. See Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656, 678-679 (9th Cir. 1963), cert. denied, 375 U.S. 922, 84 S. Ct. 267, 11 L. Ed. 2d 165 (1963). See also McEuen v. Riverview Bancorp, Inc., 2104 U.S. Dist. LEXIS 72177

29

(W.D. Wash. May 27, 2014)(cost of depositions, i.e. appearance fees and video recording, are properly considered a cost of litigation). Thus, depositions for persons who <u>might</u> be called at trial are "necessarily obtained for used in the case," even though the deponents are never called at trial, and the costs for such depositions are allowed to the prevailing party. <u>Independent Iron Works</u>, 322 F.2d at 678-79.

For example, in <u>Independent Iron Works, Inc.</u>, the Ninth Circuit held that the costs of fifteen depositions taken by the defendants were properly taxed against the plaintiff, even though the depositions were never introduced into evidence, after the defendant prevailed on a directed verdict. <u>Id</u>. at 678. The court reasoned that the depositions would have proven useful for impeaching the credibility of witnesses had those witnesses been called on the issue of damages. <u>Id</u>. Because the deponents <u>might</u> have been called at trial, the depositions were a taxable cost rightly awarded to the prevailing defendant. <u>Id</u>. Moreover, the court reasoned that the prevailing defendants' expenses for copies of depositions <u>taken by plaintiff</u> were allowable costs, as "[m]any of the deponents were officers and employees of the defendants and were, or might have been, available as witnesses at the trial." <u>Id</u>. at 678-79. Thus, "the possibility that the deposition would be used to impeach the party created a reasonable necessity for his purchase of a copy in order to hold the impeachment within proper limits." <u>Id</u>.

Moreover, FRCP 54(d) creates a *presumption* that the prevailing party is entitled to costs and rebuttal of the presumption requires a showing of either "'misconduct by the prevailing party worthy of a penalty … or the losing party's inability to pay[.]'" Cherry v. Champion International Corp., 186 F.3d 442, 446 (4th Cir. 1999). See also Nat'l Info Servs. V. TRW, Inc., 51 F.3d 1470, 1472 (9th Cir. 1999) ("A district court therefore generally must award costs unless the prevailing party is guilty of some fault, misconduct, or default worthy of punishment."), *overruled on other grounds by* Ass'n of Mexican-American Educators v. California, 231 F.3d 572 (9th Cir. 2000). In the instant case, while plaintiffs argue that costs should be denied due to a party's inability to pay, plaintiffs offered no evidence or testimony to establish that they are unable to pay the costs sought. There are multiple plaintiffs in this action and there has been no factual showing that they lack all financial resources necessary to pay their proportionate share of the taxable costs. Thus, a denial of taxable costs on this basis is unwarranted. See Cherry, 186 F.3d at 447 (court denial of costs on grounds that plaintiff had modest means was abuse of discretion, even where plaintiff had no independent income and all property was jointly owned with husband, as plaintiff objectively had the effective ability to satisfy prevailing defendant's cost bill). See also Flint v. Haynes, 651 F.2d 970, 973-74 (4th Cir. 1981) (finding no reason to treat indigents differently than non-indigents in the

context of a cost award, as all litigants are routinely forced to decide whether their claim is worth the risk).

Further, the National Lawyers Guild actively managed this litigation and plaintiffs (along with their attorney's and the National Lawyers Guild) solicited financial donations from sources across the nation.  <u>See</u> SER 362 - 391.  Thus, plaintiffs' argument that they should be excused from paying costs because of their "modest occupations" is disingenuous, at best.

Finally, plaintiffs argue that taxation of allowable costs would, in this case, chill future civil rights litigants from bringing important claims.  But plaintiffs do not articulate how or why this case is different than any other §1983 or similar case, where costs to the prevailing defendant are routinely awarded.  <u>See</u>, <u>e.g.</u>, <u>Save Our Valley v. Sound Transit</u>, 335 F.3d 932, 945 (9th Cir. 2003) (affirming award of costs to prevailing defendant in §1983 and Title VI action under Rule 54(d)); <u>Chavez v. Tempe Union High School District No. 213</u>, 565 F.2d 1087, 1095 (9th Cir. 1977) (affirming award of costs to prevailing defendants in §1983 and Title VI action under Rule 54(d)).  To hold that the presumption should be overcome in every case involving a "significant constitutional question" would render Rule 54(d) a nullity.  The exception would swallow the rule and plaintiffs have outlined no rational basis for such a position.

"[I]t is incumbent upon the losing party to demonstrate why costs should not be awarded."  <u>Stanley v. Univ. of S. Cal.</u>, 178 F.3d 1069, 1079 (9th Cir. 1999). Plaintiffs have not carried their burden on this issue and the orders taxing costs for all defendants should be affirmed.

## VII.   Conclusion

As outlined herein, the district court's rulings on summary judgment should be affirmed in all respects.  Plaintiffs failed to adduce any evidence to establish that either Mark Feddersen or Gary Smith deprived them of their constitutional rights.   There is no evidence that any of the conduct attributed to these defendants was undertaken with an intent to chill or discourage plaintiffs from engaging in expressive activity.  And in fact, the only conduct attributed to these defendants was reasonable and undertaken in support of legitimate law enforcement objectives.  Moreover, for most of the incidents upon which plaintiffs have based their claim, there is no evidence that either Feddersen or Smith were even involved in these incidents.  And even if there was a material question of fact on any of these claims, these defendants would still be entitled to summary judgment on the basis of qualified immunity.   Finally, the award of taxable costs was reasonable and should be affirmed.

## VIII.  Statement of Related Cases

Defendants/Appellees are unaware of any related cases which may be

pending before this court.

DATED this 20th day of November, 2015.

ELIZABETH A. PAULI, City Attorney


By:    s/ JEAN P. HOMAN
       JEAN P. HOMAN, WSBA #27084
       Deputy City Attorney
       Attorney for Tacoma Defendants/Appellees


## Certificate of Compliance With Type -Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

    [X]    this brief contains 8,556 words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]    this brief has been prepared in a proportionally spaced typeface
        using Microsoft Word 2010 in 14 point Times New Roman.


s/ JEAN P. HOMAN
Attorney for Appellees

Dated:  November 20, 2015

34

CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signed at Tacoma, Washington this 20th day of November, 2015.


s/  JEAN P. HOMAN
JEAN P. HOMAN
WSBA #27084